ANNE MONTAGUE

*v.*

THEODORE SELB *et al.*

*Filed at Mt. Vernon March 30, 1883.*

1. ESTOPPEL—*asserting rights at different times, inconsistent in their character, and to cut off a preëxisting right in another.* On petition for dower and homestead by the widow of a former owner of certain premises, it appeared the defendant held the premises as purchaser at the sale thereof by the administrator of such former owner, under an order of court obtained for that purpose. Prior to the sale by the administrator, a mortgage on the same premises, which had been executed by the intestate in his lifetime, and in which the rights of dower and homestead were released, had been foreclosed, and the certificate of purchase executed thereunder was assigned to the defendant, the purchaser at the administrator's sale. These facts were set up in the answer of defendant, who contended the widow's rights of dower and homestead should be subjected to the condition that she contribute, *pro rata*, to the amount paid out by him in acquiring the certificate of purchase issued in the foreclosure proceeding, and so it was ruled in this court, reversing the decree of the trial court and remanding the cause. Upon the remandment, the defendant, in a supplemental answer, set up that since the original hearing he had obtained a deed upon his certificate of purchase, claiming thereunder adversely to the petitioner, and that she was thereby barred of any right of dower or homestead. It was *held*, that inasmuch as the defendant, on the first hearing, only asked that the petitioner make contribution, thereby, in effect, representing that redemption had been made from the mortgage sale, he would be equitably estopped to afterward assert a claim adverse to the widow's rights, whereby, from lapse of time, she would have lost her right to protect her interests by making redemption herself, and also barred from securing her rights by making contribution.

2. TENANCY IN COMMON—*widow's homestead and estate of heirs, or title of purchaser of inheritance.* Where a man dies in the occupancy of premises as his homestead, leaving a widow and heirs in possession, and the premises exceed the homestead estate in value, and the homestead is not set off and specifically defined, the widow and the heirs, until severance of their interests, will hold as tenants in common, and on sale of the inheritance by the administrator for the payment of debts the purchaser will take the place of the heirs, and become a tenant in common with the widow as to her homestead estate.

3. SAME—*purchase of outstanding title, etc., by one inures to all.* One co-tenant can not take advantage of any defect in the common title by purchasing an outstanding title or incumbrance, and asserting it against his com-

4—106 ILL.

panions in interest; but in such case the purchase is, notwithstanding the design of the purchaser to the contrary, for the common benefit of all the co-tenants,—and this rule applies whether the several interests accrue under the same instrument or act of the law. It is founded on the duty which the connection of the parties as claimants of a common subject creates.

4. A purchaser of land at administrator's sale, in which land the widow of the intestate has a homestead estate in the equity of redemption, can not cut off the widow's right of homestead by the subsequent purchase of a certificate of purchase given on a sale under a decree foreclosing a mortgage given by the intestate and wife, in which the homestead is released, and taking out a master's deed for the land, such purchaser and the widow, in respect to her homestead estate, being tenants in common. The purchaser will hold such after-acquired title in trust for the common estate, and the widow will be entitled to avail of it upon making ratable contribution of the amount paid out for it.

5. PRACTICE—*waiver of objection by not making it in time.* A party will not be allowed to lie by and permit matters to pass unchallenged in the court below, and then urge them as objections for the first time in this court; and it is much more inadmissible that a party should try a cause without raising a particular objection, submit it in this court without raising that objection, and then retry it, and for the first time when the case is brought here a second time, raise such objection.

6. CHANCERY PRACTICE—*filing supplemental answer.* The filing of a supplemental answer after the reversal of a decree and the remanding of the cause, setting up matter in contradiction of the original answer, as, setting up a title inconsistent with a right distinctly admitted by the first answer, should not be allowed.

APPEAL from the Circuit Court of Madison county; the Hon. AMOS WATTS, Judge, presiding.

This was a bill by appellant, against appellees, to set off homestead and dower. It is alleged in the bill that appellant was the wife of Daniel Montague; that he died intestate; that he resided on the lands described in the bill, as his homestead, prior and up to the time of his death, and that since his death she has continued to, and still does, reside thereon with her family, etc., and that she thereby became, and is, entitled to homestead and dower in said lands, which have never been assigned to her. It is further alleged in the bill that at the May term, 1880, of the Madison county court,

upon the petition of the administrators of the estate of said Daniel Montague, deceased, an order was made directing said administrator to sell said real estate to pay the debts of said deceased, subject to the homestead and dower rights of appellant, and that in pursuance of said order said real estate was sold to appellees, and a deed was made to them. The prayer is that homestead and dower be set off and assigned to appellant, etc., and also for general relief.

The answer of appellees sets up, in substance, that before appellant and Daniel Montague were married,—namely, on the 17th of June, 1872,—Daniel Montague executed a mortgage on a portion of these lands to Celia Morrison, to secure $500, and on the 3d day of November, 1873, he gave a second mortgage on a portion of these lands to John Wood, to secure an indebtedness of $852, and interest. In each of these mortgages Montague released the right of homestead. After appellant and said Montague were married,—namely, on the 20th of October, 1876,—he executed another mortgage on another part of said lands, to secure $1000. In this mortgage appellant released her homestead right and dower. This last mortgage and indebtedness were assigned to and held by appellees, unpaid, at the time of answering. The first two mortgages were foreclosed at the March term, 1880, of the Madison county circuit court, upon a bill and cross-bill, and on the 3d day of July, 1880, the premises were sold under the decree of said court to J. H. Spence and John Sœchtig, for $1638. After the sale the certificate of purchase was sold and transferred to appellees, who still hold the same. The answer concluded by alleging that "whatever claim of dower or homestead the said complainants may have in said premises, or to any part thereof, is subject to the deeds of trust and the certificate of purchase above set forth," and it concludes by praying "that an account may be taken by the court, in this behalf, of the amounts due upon said deed of trust and certificate of purchase, and that on

determining the value of the dower or homestead of said complainant, that said amount found to be due as aforesaid be deducted from the value of said premises before her dower or homestead in the same are set off to said complainant."

On hearing, the circuit court decreed that appellant have homestead and dower set off to her as prayed in the bill. That decree was brought before this court on error, at the November term, 1881, and the decision here reversed the decree below and remanded the cause for further proceedings. (102 Ill. 446.) After the cause was remanded, appellees, by leave of court, filed a supplemental answer, alleging that since the filing of their original answer, on the 30th of March, 1882, (there having been no redemption from the sale of which they alleged, in their original answer, an assignment of the certificate of purchase to themselves,) the master in chancery made and executed a deed to them for the lands in the certificate described, and therefore, as to such lands, they deny that appellant is entitled to homestead and dower. On final hearing, the court decreed that appellant was not entitled to homestead or dower in the premises described in the bill of complaint, and that she pay the costs, etc. This appeal is prosecuted from that decree.

Messrs. METCALF & BRADSHAW, for the appellant:

The court erred in allowing the amendment to appellees' answer setting up their title, and in admitting in evidence deeds showing title under the mortgage sale. This court having passed upon all the equities of the parties in their opinion, it was the duty of the circuit court to carry that opinion into effect.

Appellees, by their purchase at the administrator's sale, acquired the interest of Daniel Montague in this land, subject to these incumbrances, and after having, as such purchasers, asked and obtained the protection of this court, they will not be permitted to shift their ground from the administrator's

deeds to deeds obtained under the foreclosure sales, and thus cut the widow out of her dower and homestead. If they held the equity of redemption it was their duty to redeem from the foreclosure sale. Hurd's Stat. 657, sec. 18.

Having based their defence upon the administrator's deed, and treating the assignment of the certificate of purchase under the foreclosure of the mortgage as a redemption, and claiming contribution from the widow in respect to her dower and homestead, which was awarded them by this court, appellees could not, on the remanding of the case, set up the execution of the master's deed to them on the certificate of purchase, and thus deprive the widow of her rights on contributing her ratable share of the sum paid by them for the certificate of purchase.

Messrs. KROME & HADLEY, for the appellees:

Two of the mortgages were given by Montague prior to his marriage, and were foreclosed, the land sold, and the certificate assigned to appellees. The third mortgage was given after appellant's marriage, was signed by her, and her dower and homestead thereby released. It is the title acquired by appellees under the first two mortgages which they set up on the second trial of this case as a bar to appellant's claims.

The statute gives a widow dower in lands mortgaged by her husband before the marriage against every person except the mortgagee and those claiming under him. Hurd's Stat. 1880, chap. 41, sec. 3.

The title of the purchaser at the mortgage sale, or his assignee, relates back to the date of the mortgage, and any person claiming an interest in the premises, acquired since the execution of the mortgage, must redeem from the mortgage or suffer his interest to be barred. *State Bank* v. *Wilson*, 4 Gilm. 57; *Chickering* v. *Failes*, 26 Ill. 516; *Mattison* v. *Thomas*, 41 id. 114.

It is contended that notwithstanding the master's deed, appellant should be allowed dower upon contributing her proportionate share of the incumbrances. This would amount to a redemption *pro tanto* from the mortgage sales. The right of redemption is purely statutory, and must be exercised in the manner and within the time pointed out in the statute. *Littler* v. *People,* 43 Ill. 188; *Moore* v. *Hopkins,* 93 id. 507; *Suitterlin* v. *Connecticut Mutual Life Ins. Co.* 90 id. 484; *Cooper* v. *Crosby,* 3 Gilm. 506.

Under the petition filed in this case no such relief can be granted. There is nothing in the whole record to show that appellant offered to contribute towards the payment of the incumbrances. She does not offer to do so in her petition.

Mr. JUSTICE SCHOLFIELD delivered the opinion of the Court:

When this case was before us at a former term, the controversy was whether the present appellant was entitled to dower and homestead in the premises described in the bill without contributing on account of the prior incumbrances, or whether she was bound to make contribution on that account. She contended that, under the evidence in the record, the purchasers at the administrator's sale assumed the burden of removing the prior incumbrances, and took title subject to her right of dower and estate of homestead. The present appellees denied this position, and contended that she was liable to make contribution on account of the prior incumbrances. We sustained this view, and reversed the decree and remanded the cause, and in doing so used this language: "The decree of the circuit court granting to the widow, unconditionally, dower and an estate of homestead, was therefore erroneous, in not subjecting her rights each to the condition that she should, as to each right, contribute a ratable share, in regard to such right, of the redemption money paid by appellants for the discharge of the mortgages, before she should be permitted to avail herself of that right.

The decree is therefore reversed, and the cause remanded for other proceedings not incompatible with the views here expressed." (*Selb et al.* v. *Montague*, 102 Ill. 452.) But the court below, instead of proceeding in compliance with this direction, permitted the present appellees, by a supplemental answer, to set up that since the former hearing they had obtained a deed on the certificate of purchase which they then held, and which, in the argument and consideration of the case when formerly here, was treated as a redemption from or payment and discharge of the prior mortgage, and to rely on that deed as a bar to appellant's claim for dower and estate of homestead, and the present question is, whether appellees can be allowed to now set up that deed as a complete bar to appellant's claim for dower and estate of homestead.

In their original answer, appellees, after stating their ownership of the certificate of purchase, prayed the court that appellant be decreed to pay ratably the amount paid out by them on that account. It was not then asserted that appellees, by acquiring the certificate, had acquired an adverse interest in the property, but it was, by implication at least, conceded that they had simply removed a common burden upon both their and appellant's interests, and hence that in equity appellant was bound to make contribution, as a condition to the enjoyment of her rights. Had appellant been then advised the purpose was to assert an interest adverse to her claim, under and by virtue of that purchase, there was yet ample time in which she could have protected herself by making a redemption, but by asking that she be required to make contribution, she was, in effect, told redemption had already been made, and she had a right to rely on the belief that the sole question involved was whether she was compelled to make contribution as a condition to the assertion of her claim for dower and homestead. If she was entitled to make contribution then, it is inequitable that she should now

be told she has no such right. Appellees having, then, asserted that she should make a *contribution* to them for having removed a prior incumbrance to their common interest, are now equitably estopped to say that was not true, but that she was only entitled to make a *redemption*, which has since been barred by lapse of time.

But appellant's right to treat appellees' purchase of the certificate as the simple removal of a prior incumbrance upon her and their common interest, rests also upon another very satisfactory ground. The record shows occupancy of the premises as a homestead by Daniel Montague at the time he and appellant were married, and thenceforth until his death, and the continued occupancy of the premises as a homestead by appellant and her family since that time; and it also appears that the homestead estate will not necessarily embrace the entire premises, but leave something beyond for the heirs and creditors. When Daniel Montague died, therefore, this was the condition of these premises. They were charged with the payment of these mortgages, but he was in possession and still had the equity of redemption. In this equity of redemption appellant had an estate of homestead, and so much of such equity as was not embraced by that estate descended to his heirs at law. The estate of homestead not being set off and specifically defined, its exact limits and boundaries could not be determined, (Rev. Stat. 1874, chap. 52, secs. 10, 11,) and necessarily, therefore, she and the heirs, until its severance, must hold as tenants in common, having the requisite unity of possession. When the administrators sold for the payment of debts, they only sold, and could only sell, the interest of the heirs at law, and, therefore, the purchasers at such sale, taking the place of the heirs at law, became tenants in common with appellant.

It is said in Freeman on Co-tenancy, sec. 96: "As tenancy in common may arise from such a confusion of goods that neither owner can designate and reclaim his own, so it

may exist whenever the title of real estate is such that neither of the owners can locate his part. If the owner of a tract conveys a number of acres, less than the whole, without any designation of their locality, the grantee thereby acquires an interest in the whole tract as tenant in common with the grantor. The interest of the grantee in the whole tract is in the proportion which the number of acres conveyed to him bears to the whole number, and entitles him to all the rights and remedies incident to a tenancy in common. It is immaterial by what means the interest is created, so long as it remains unsegregated. Hence, where a defendant was entitled to a homestead of a specific value out of a tract of land which had been sold under execution, it was held that as the purchaser owned all in excess of the homestead limit of value, and the defendant owned all within that limit, and as neither had a claim to any specific portion, they were tenants in common in proportion to the value of their respective interests." The author refers to *Silloway* v. *Brown,* 12 Allen, 30, in support of the last proposition. In that case the court said, among other things: "The homestead estate differs, indeed, from ordinary estates held in common, in not being an aliquot part of the land, but measured by value only, which may be constantly fluctuating. * * * But when an estate of homestead has once been acquired in land of a greater value than the limit of the homestead exemption, and the surplus has been alienated by levy of execution or sale according to law, the owner of the homestead and the owner of the residue each has a right of immediate possession and enjoyment of the land. * * * Their rights in this respect are exactly those of tenants in common, according to the elementary definition. 'Tenants in common are such as hold by several and distinct titles but by unity of possession, because none knoweth his own severalty, and therefore they all occupy promiscuously. This tenancy therefore happens where there is a unity of possession merely, but perhaps an

entire disunion of interest of title and of time.' (2 Blackstone's Com. 191.) The facts that the defendant had an estate for life, and the plaintiff an estate in fee; that the defendant held by virtue of the Homestead act, and the plaintiff by purchase from the defendant's assignee in insolvency, and that the defendant acquired his title long before the .plaintiff purchased his,—do not make them the less tenants in common by reason of their unity of possession." (Page 36.)

There is here, it will be observed, a common interest in the title of Daniel Montague. Both the rights of the heirs, (and, by necessary consequence, those of the purchasers at the administrator's sale,) and those of the widow, rest upon that title. Any paramount title defeating the one must necessarily defeat the other.

The general doctrine is, a co-tenant can not take advantage of any defect in the common title by purchasing an outstanding title or incumbrance, and asserting it against his companions in interest; but in such case the purchase is, notwithstanding his designs to the contrary, for the common benefit of all the co-tenants. (Freeman on Co-tenancy, sec. 154.) The objection has sometimes been urged that this doctrine only applies where there is an equality of interest or estate, but in *Rothwell* v. *Dewees*, 2 Black, 613, the Supreme Court of the United States held that objection untenable; and in *Bracken et al.* v. *Cooper et al.* 80 Ill. 229, this court followed the ruling in *Rothwell* v. *Dewees,* observing: "We do not find sufficient authority or reason to induce us to adopt the qualification of the doctrine, as applied to tenants in common, that their interest should accrue under the same instrument or act of the law. We regard the rule as founded upon the duty which the connection of the parties as claimants of a common subject creates, and not as dependent upon the accidental circumstances whether the relationship of the parties be constituted by the same instrument or act of the parties or of the law, or not."

There are obvious and peculiarly intimate relations of trust and confidence between the widow and heir at law, — the owner of the homestead and of the inheritance,—which it would be clearly contrary to the law to allow violated, which it is not necessary to specify. It is sufficient to say they exist, and are, presumably, obvious. It necessarily results that, in our opinion, appellees could not, by taking a deed by virtue of the certificate of sale, cut off appellant's rights. They hold this title in trust for the common estate, and appellant is entitled to avail of it upon making ratable contribution of the amount paid out for it.

The objection, however, is interposed, that appellant has never offered to make contribution. That objection is now urged for the first time. It comes too late. We have before seen that appellees, in their original answer to the bill, after setting up their ownership of the certificate of purchase, prayed the court that appellant be decreed to pay ratably the amount paid out by them on that account, and that the only question made here, on the former argument, was whether appellant should be held to so contribute. If the objection that an offer to contribute should have been alleged in the bill is tenable now, it was tenable then, and was tenable in the circuit court on the first hearing. We have often held a party can not be allowed to lie by and permit matters to pass unchallenged, and then urge them as objections for the first time in this court. Much more is it inadmissible that a party should try a cause without raising a particular objection, then submit it in this court without raising that objection, then retry it, and for the first time when the case is brought here a second time, raise the objection. The supplemental answer presented, in fact, no new question. If it had, it would have been in contradiction of the original answer, because the attempt was to set up a title inconsistent with a right there admitted, and for that reason it would seem it ought not to have been allowed to be filed.

(*Greenwood* v. *Atkins*, 4 Sim. 61.) But the question remained precisely the same after as before that answer was filed. The purchase of the certificate by the appellees was in trust for all the co-tenants, and that was totally unaffected by the subsequent taking of the deed. The deed, after it was obtained, was held precisely as the certificate had been held.

For the reasons expressed the decree below is reversed, and the cause remanded for further proceedings consistent therewith.

*Decree reversed.*