SALLIE M. SCOTT (WIDOW); HAZEL IRENE SCOTT SMITHERMAN (WIDOW); SHERMAN GRAY SCOTT AND WIFE, KATE ELUIRA FULK SCOTT; AND MAUDE SCOTT MIKLES (WIDOW), PLAINTIFFS v. RUBY JUANITA SCOTT MOSER AND HUSBAND, HAROLD MOSER; SHIRLEY GRAY MIKLES HESTER AND HUSBAND, ROGER HESTER; SHELBY JEAN MIKLES DORSETT AND HUSBAND, JAMES W. DORSETT, JR.; JIMMY DARRELL MIKLES AND WIFE, ELLEN WALLEN MIKLES; BARBARA ANN SCOTT CARROLL AND HUSBAND, BARRY GYNN CARROLL; AUDREY GRAY SCOTT ISACCS AND HUSBAND, TED L. ISACCS; JUDY KAY SCOTT GOODWIN AND HUSBAND, GRADY JOHN GOODWIN; PEGGY PAULINE O'NEAL SMITHERMAN, WIFE OF FREDERICK GRAY SMITHERMAN (DECEASED); GEORGE NEAL SMITHERMAN AND WIFE, HILDA ELIZABETH HIATT SMITHERMAN; GLENDA GAY SMITHERMAN WALL AND HUSBAND, GLENN RAY WALL; PEGGY SUE SMITHERMAN MOORE AND HUSBAND, DONNIE RAY MOORE; GARY J. MOSER AND WIFE, PHYLLIS PARDUE MOSER; BRIAN KEITH MOSER, A MINOR; KAREN DAWN ELLIOTT, A MINOR; CARMEN JOY ELLIOTT, A MINOR; LISA LORENE ELLIOTT, A MINOR; RINA ARLENE ELLIOTT, A MINOR; DEBRA LYNN DORSETT, A MINOR; KIMBERLY MICHELLE DORSETT, A MINOR; BARRY GYNN CARROLL, JR., A MINOR; BYRAIN SCOTT CARROLL, A MINOR; SCOTT EUGENE GOODWIN, A MINOR; DONNA REENA SMITHERMAN, A MINOR; PAMELA KAY SMITHERMAN, A MINOR; SHARRON DENISE SMITHERMAN, A MINOR; DEBORAH SUE WALL, A MINOR; KIMBERLY GAY WALL, A MINOR; RANDY GRAY MOORE, A MINOR; RHONDA GAIL MOORE, A MINOR; ANY UNBORN AND UNKNOWN PERSONS WHO MAY BE CHILDREN OF HAZEL IRENE SCOTT SMITHERMAN, SHERMAN GRAY SCOTT, AND MAUDE SCOTT MIKLES; ANY UNBORN OR UNKNOWN PERSONS WHO MAY BE HEIRS OF G. WES SCOTT (DECEASED) AT THE DEATH OF HAZEL IRENE SCOTT SMITHERMAN, SHERMAN GRAY SCOTT, OR MAUDE SCOTT MIKLES; ANY UNBORN AND UNKNOWN CHILDREN OF RUBY JUANITA SCOTT MOSER AND MAUDE

Scott v. Moser

SCOTT MIKLES AT THE TIME OF THE DEATH OF THE LAST
SURVIVOR OF THE TWO; AND ANY UNBORN AND UNKNOWN
PERSONS WHO MAY BE THE HEIRS OF THE CHILDREN OF
RUBY JUANITA SCOTT MOSER AND MAUDE SCOTT MIKLES,
MICHAEL WESLEY DORSETT, A MINOR; HOKE F. HENDERSON,
GUARDIAN AD LITEM FOR ALL MINOR DEFENDANTS AND FOR THE UNKNOWN
AND UNBORN CHILDREN OR HEIRS SET FORTH IN THE ORDER OF JULY 14,
1975, DEFENDANTS

No. 7617DC304

(Filed 3 November 1976)

Partition § 12; Descent and Distribution § 2— partition deeds — tenant and
others named as grantees — no title conveyed to others

Where three children of an intestate, being the fee simple owners
of intestate's lands as tenants in common, agreed among themselves
upon a division of the lands into three portions and executed cross
deeds of partition to carry out their agreement, the deed for one
child's share was made to her and to her daughter, the deed for a
second child's share was made to her and to her husband, and all
three deeds purported to convey remainder interests after a life estate
or estates in the named grantee or grantees, it was *held* that the
cross deeds of partition operated only to sever the unity of possession
and conveyed no title, and thus neither the first child's daughter, the
second child's husband nor any of the remaindermen obtained any
title or interest by virtue of the partition deeds.

APPEAL by defendant guardian ad litem from *Van Noppen,*
*Judge.* Judgment entered 27 January 1976 in District Court,
SURRY County. Heard in the Court of Appeals 25 August 1976.

This is an action under the Declaratory Judgment Act to
obtain a declaration of the rights of the parties under three
deeds recorded in Surry County, N. C. In the alternative plain-
tiffs seek reformation of the deeds on the grounds of mutual
mistake. All adult defendants filed answers admitting the
allegations of the complaint and joining in the prayer for re-
lief. The guardian ad litem, appointed by order dated 14 July
1975 for all minor defendants and for the unknown and unborn
children or heirs, filed answer asserting the rights of his wards
under the deeds in question.

Copies of the deeds, all of which are dated 11 February
1956, are attached to the complaint as Exhibits A, B, AND C.
Exhibit A, contains the following recitals:

"WHEREAS, G. Wes Scott died intestate in Surry
County, N. C. on January 20, 1956 leaving as his sole and

only heirs at law, Sallie M. Scott, widow, Gray Scott, a son, and Irene Scott Smitherman and Maude S. Mikels (sic), daughters; and

WHEREAS, the heirs at law of the decedent knew what disposition the decedent wanted made of his property and intended before death to make deeds or a Will dividing his property as he desired and said heirs are desirous of carrying out the intentions of the decedent;

NOW, THEREFORE, in consideration of the premises, the execution of cross deeds between the children of the decedent and their spouses, if any, the exchange of interest in the properties of the decedent, the execution of a written contract between the children of the decedent for the care and benefit of the widow, and other valuable consideration. . . ."

Exhibits B and C contain essentially the same recitals, although there are slight variations in wording in each. For example, Exhibit B contains the recital that all of the heirs are desirous of carrying out the intentions of the decedent "by executing partition deeds."

In Exhibit A, which is recorded in the office of the Register of Deeds for Surry County in Book 203 page 61, the parties of the first part are Irene Smitherman and husband, A. F. Smitherman; Sallie M. Scott, widow of G. Wes Scott; and Maude S. Mikels (sic) (divorced). The party of the second part is Gray Scott. By this deed the parties of the first part purported to convey all of their right, title and interest in and to certain described tracts of land to the party of the second part "for and during his natural life and at his death to his children, if any, and if no children survive him, then to the heirs and descendants of said decedent." The habendum is to the party of the second part "for and during his natural life and at his death to his children, or the survivor of his children if any, and if no children or the survivor of any child of his does not (sic) survive him, then unto the heirs at law and descendants of G. W. Scott."

In Exhibit B, which is recorded in Book 203 page 71, the parties of the first part are Sallie M. Scott, widow of G. Wes Scott; Irene Smitherman and husband, A. F. Smitherman; and Gray Scott and wife Kate Scott. The parties of the second part are Maude S. Mikels (sic) and Juanita Scott Moser (daughter

of Maude S. Mikles). By this deed the parties of the first part purported to convey all of their right, title and interest in and to certain described tracts of land to the parties of the second part "for and during their natural lives and at the death of the survivor of the parties of the second part, to the children of the parties of the second part." The habendum is to the parties of the second part "for and during their natural lives and at the death of the survivor of the parties of the second part, then to the children of the parties of the second part and if the parties of the second part should die without leaving children, then said lands shall go to the heirs at law and descendents of G. W. Scott."

In Exhibit C, which is recorded in Book 203, page 64, the parties of the first part are Sallie M. Scott, widow of G. Wes Scott; Gray Scott and wife, Kate Scott; and Maude S. Mikels (sic) (divorced). The parties of the second part are Irene Scott Smitherman and husband, A. F. Smitherman. By this deed the parties of the first part purported to convey all of their right, title and interest in and to certain described tracts of land to the parties of the second part "for and during their natural lives and at the death of a (sic) survivor of the parties of the second part to the children born to the marriage of the parties of the second part and if no children of parties of the second part survive them, then upon the death of the survivor of parties of the second part, then to the heirs and descendents of G. Wes Scott." The habendum is to the parties of the second part "for and during their natural lives and at the death of the survivor of parties of the second part, then to the children born to the marriage of parties of the second part and if no children survive the survivor of parties of the second part, then to the heirs and descendents of G. Wes Scott."

The case was tried without a jury. The court entered judgment making findings of fact which, insofar as pertinent to this appeal, may be summarized as follows:

G. Wes Scott died intestate on 20 January 1956. At the time of his death he owned in fee simple all of the lands described in the deeds involved in this action. He left surviving his widow, Sallie M. Scott, and as his only heirs at law his three children, Sherman Gray Scott, Maude Scott Mikles, and Hazel Irene Scott Smitherman, all of whom are plaintiffs in this action. Shortly before his death he told his son, Sherman Gray Scott, how he would like to have his property divided

among his three children. At no time in the discussions did he indicate any desire that any restrictions be placed on the property when it was divided. After G. Wes Scott died, plaintiffs desired to divide the property as he had indicated he wished it to be divided. His widow, Sallie M. Scott, indicated that she did not wish to own any property but that she preferred to deed any interest she might have in return for an agreement by her children to see that she was taken care of during her lifetime. This agreement with Sallie M. Scott, who was over 90 years of age at the time of the trial, has in all respects been complied with.

As a result of the discussions between the plaintiffs as to a proper partition and division of the real property owned by G. Wes Scott, the plaintiffs agreed that Sherman Gray Scott was authorized to employ an attorney at law to draw cross deeds of partition to divide the property as G. Wes Scott had desired the property to be divided. Sherman Gray Scott was concerned that when Hazel Irene Scott Smitherman received her portion of the property, her husband, A. F. Smitherman, who was then living but is now deceased, would make some effort to force Hazel to sell her property. Sherman Gray Scott discussed this matter with Hazel, and they agreed some method should be used to restrict any right that A. F. Smitherman might have in trying to force his wife to sell her portion of the lands. Sherman Gray Scott suggested to the other plaintiffs that if such restrictions were to be placed on the lands of Hazel, the same restrictions should be placed upon the lands of the other two children of G. Wes Scott to avoid the appearance of any unfair treatment of Hazel. In furtherance of this plan of division, Sherman Gray Scott attempted to devise a method for preparing the deeds so that the husband of Hazel Irene Scott Smitherman would not be able to require his wife to sell her property during his lifetime. Sherman Gray Scott was not trained in the law; he had completed only 6 grades of school. He did not know the legal effect of a deed in which he and his sisters would have only a life estate in the property. It was not the intention of either Sherman Gray Scott, Maude Scott Mikles, or Hazel Irene Scott Smitherman to limit their rights to do what they wanted to do with their land, and they still thought at the time of the execution of the deeds that they, themselves, would be able to do whatever they desired with the land. The deeds were prepared by an attorney according to the instructions provided by Sherman Gray Scott. At the

time of the execution of the deeds the plaintiffs did not know that they were signing documents which purported to divest fee simple interest in the properties from Sherman Gray Scott, Maude Scott Mikles, and Hazel Irene Scott Smitherman.

After the cross deeds were executed in 1956, plaintiffs occupied their separate tracts of land without incident until about 1972, when the State sought to purchase portions of the lands described in the deeds, which are plaintiffs' exhibits A and B, for an expansion of Pilot Mountain State Park. For the first time, plaintiffs then learned that a question existed as to their right to convey fee simple title to the lands.

Based on its findings of fact, the court concluded as a matter of law that plaintiffs were under a mutual mistake of fact and of law such as to entitle them to have the deeds reformed to conform with the true intent of the parties at the time the deeds were executed. The court also concluded as a matter of law that the deeds are cross deeds of partition and that the only effect of the deeds was to divide the properties owned by G. Wes Scott at the time of his death and to provide for the disposition of the dower interest of the widow, Sallie M. Scott.

The court entered judgment that the deeds be reformed to accord with its findings and conclusions. Specifically, the court adjudged that Sherman Gray Scott is the owner in fee simple of all lands described in Exhibit A, that Maude Scott Mikles is the owner in fee simple of all lands described in Exhibit B, and that Hazel Irene Scott Smitherman is the owner in fee simple of all of the lands described in Exhibit C.

From this judgment, the guardian ad litem appealed.

*Folger & Folger by Fred Folger, Jr., and Larry Bowman for plaintiff appellees.*

*Allen, Henderson & Allen for Hoke F. Henderson, guardian ad litem, appellant.*

PARKER, Judge.

The trial court rested its judgment upon two grounds: first, that the plaintiffs were under a mutual mistake of fact and of law such as to entitle them to have the deeds reformed; and second, that the deeds were cross deeds of partition which conveyed no rights to the wards of the appellant. We find the second ground sufficient to support the judgment and affirm.

When G. Wes Scott died intestate, fee simple title to his lands vested in his three children, Gray, Irene, and Maude, as tenants in common. (Their title was, of course, subject to their mother's dower rights; but such rights were released in exchange for their agreement to support their mother; the record indicates that this agreement has been honored and no question concerning the widow's dower rights has been raised on this appeal.) The three children, being the fee simple owners of the lands as tenants in common, agreed among themselves upon a division of the lands into three portions and agreed which portion each should receive. Cross deeds of partition were executed to carry out this partition agreement. The deed for Maude's share (Exhibit B) was made to her and to her daughter. The deed for Irene's share (Exhibit C) was made to her and to her husband. All three deeds purported to convey remainder interests to appellant's wards after a life estate or estates in the named grantee or grantees.

We find decision of this case controlled by the decision in *Harrison v. Ray*, 108 N.C. 215, 12 S.E. 993 (1891). In that case one Oakley Harrison and his brothers and sisters divided lands, inherited by them from their father, by deeds of partition. The deed for Oakley Harrison's share was made to him and his wife, Juda. Thereafter Oakley died and Juda married the defendant, David Ray. The plaintiffs, who were Oakley Harrison's children by his first wife, brought suit against Juda and her new husband, David Ray, to recover the land described in the deed to Oakley and Juda. They alleged that the name of Juda was inserted in the deed by mistake and inadvertence of the draftsman. At the trial, the court submitted as the first issue whether the name of Juda was inserted in the deed by mistake. The jury answered the issue against the plaintiffs, who then moved for judgment n.o.v. and excepted to refusal of the motion. On appeal, our Supreme Court reversed. The opinion of the Court, written by Clark, J. (later C.J.), contains the following:

> "[T]he deed to Oakley Harrison and wife operated merely as a partition of the lands and conveyed no estate to them. The land in controversy was the share of Oakley Harrison in the lands inherited by him and his brothers and sisters. This tract was ascertained to be his share by the consent partition, which was had in lieu of legal proceedings to appoint commissioners to mark it off and assign it. It is not claimed that Juda, the wife, had any interest in the land

so that anything should have been assigned her, but it is contended that by Oakley Harrison's direction the deed was drawn to him and his wife jointly. Suppose this to be so. The grantors were not conveying any additional estate or interest to Oakley Harrison. He had bought nothing and they were not making him a present of anything. The deed only assigned to him in severalty and by metes and bounds what was already his. The grantors conveyed no part of their shares. They had no interest in the share embraced in the deed to Oakley Harrison, and could convey no interest therein to him or anyone else. It was his by the conveyance from his father. He received no title nor estate by virtue of the deed from his brothers and sisters, nor could his wife. His direction to the other heirs (if given) to convey to himself and wife could not have the effect to make the deed a conveyance of anything to his wife, when it was not such as to himself. The title being already in him, the deed merely designated his share by metes and bounds, and allotted it to be held in severalty. No title passed by the deed, nor by any of the deeds. 'Partition makes no degree. It only adjusts the different rights of the parties to the possession. Each does not take the allotment by purchase, but is as much seized of it by descent from the common ancestor as of the undivided share before partition.' Allnatt on Partition, 124. The deed of partition destroys the unity of possession, and henceforward each holds his share in severalty, but such deed confers no new title or additional estate in the land. 2 Bl. Com., 186. Hence it is that, in partition, whatever the form of the deed, there is an implied warranty of title by each tenant to all the others. *Huntley v. Cline,* 93 N.C., 458." *Harrison v. Ray, supra* at 216-217.

The principles announced in *Harrison v. Ray, supra,* have been consistently followed in the years since that case was decided. For example, in *Elledge v. Welch,* 238 N.C. 61, 76 S.E. 2d 340 (1953), Johnson, J., speaking for our Supreme Court, said (at page 66) :

"Deeds between tenants in common, when the purpose is partition, operate only to sever the unity of possession and convey no title. Each party holds precisely the same title which he had before the partition, and neither co-tenant derives any title or interest from his cotenants, the

theory being that the undivided interest held by each in the whole tract is severed by the partition from the interests of the others and concentrated in the parcel set apart to each, with the interests of the others being excluded therefrom. (Citations omitted.)

Accordingly a deed made by one tenant in common to a cotenant and the latter's spouse in partitioning inherited land or land held as a tenancy in common, does not create an estate by the entirety or enlarge the marital rights of the spouse as previously fixed by law."

Applying the principles announced in *Harrison v. Ray, supra,* and in *Elledge v. Welch, supra,* to the case now before us, the cross deeds of partition which were executed between the tenants in common operated only to sever the unity of possession. They conveyed no title. Thus, neither Maude's daughter, nor Irene's husband, nor any ward represented by the defendant guardian ad litem obtained any title or interest by virtue of any of the partition deeds.

The judgment appealed from is

Affirmed.

Chief Judge BROCK and Judge ARNOLD concur.